## MARTINEZ v. GALLEGOS et al.

### [No. 2727.    Sept. 25, 1922]

#### SYLLABUS BY THE COURT

(1)    Section 18 of Chapter 48, Laws of 1921, interpreted, and held to authorize Harding county to issue bonds for courthouse and jail purposes without the submission of the question to a vote of the people, as required by Section 10 of Article 9 of the state Constitution.    P. 171

(2)    The section, as thus interpreted, is held not to be prohibited by Section 24 of Article 4 of the Constitution, which prevents special legislation.    P. 173

Appeal from District Court, Harding County; Leib, Judge.

Suit by Manuel Martinez against E. F. Gallegos and others. From an order sustaining a demurrer to the complaint and dismissing the suit, plaintiff appeals.

Affirmed.

E. P. Davies, of Santa Fe, for appellant.

C. J. Roberts, of Santa Fe, for appellee.

OPINION OF THE COURT

PARKER, J.  By Chapter 48, Laws 1921, the county
of Harding was created.  Section 18 of. that act pro-
vides:

"The county of Harding may issue bonds for courthouse
and jail purposes to an amount not exceeding twenty-five
thousand ($25,000.00) dollars, which bonds shall be issued in
the manner as provided by the Constitution and the laws
of the state of New Mexico, payable absolutely thirty years
from their date, and, at the option of the county, twenty
years from their date."

The county commissioners of that county were about
to issue the bonds provided for in this section, when
this suit was brought to enjoin such action.  The district
court sustained a demurrer to the complaint and dis-
missed the suit, from which judgment this appeal was
taken.

The section of the act in question is attacked upon
several grounds, and a number of constitutional pro-
visions are invoked.  Section 10, Article 9 of the Con-
stitution is as follows:

"No county shall borrow money except for the purpose of
erecting necessary public buildings or constructing or re-
pairing public roads and bridges, and in such cases only
after the proposition to create such debt shall have been
submitted to the qualified electors of the county who
paid a property tax therein during the preceding year and
approved by a majority of those thereon.  No bonds issued
for such purpose shall run for more than fifty years."

[1]  The bonds in question in this case were about
to be issued by the board of county commissioners
without first submitting the question as to their issue
to the qualified electors of the county for their approval,
and it is for this reason, among others, that the pro-
posed action of the county is challenged.  It is assumed
by counsel for appellant that the section authorizes the
issuance of bonds without submitting the question to a

vote of the taxpayers, and it is argued by counsel for appellees that this is the meaning of the section. With this interpretation of the section we agree. The constitutional provision on the subject is above set out. The statute law on the subject is contained in Sections 1156 to 1171, inclusive, Code 1915. These sections provide for a submission of the question to a vote of the people upon a petition of a specified number of qualified electors in the county at an election therein provided for. The procedure for a petition and election are set out in detail in the statute. Section 1167 provides for the levy of an annual tax to provide for the interest upon said bonds and for a sinking fund, thus meeting the requirements of Section 29 of Article 4 of the Constitution. These sections were originally enacted as Chapter 83, Laws 1891, and are all parts of that act. They remained in full force after the adoption of the Constitution, and are in exact accord with the constitutional provisions heretofore referred to. When the Legislature inserted this section of the Harding county act, it must have intended to grant some other and further power to the new county than that possessed by the old and fully organized counties of the state, under the general law above mentioned. That power must be the power to issue bonds for courthouse and jail purposes without the submission of the question to the vote of the people. The provision in the section that the bonds be issued in accordance with the Constitution and laws of the state, must refer to Section 29 of Article 4, above referred to, requiring provisions to be made for the levy of taxes, to pay interest, and provide a sinking fund, and to the provisions of the statute above referred to, prescribing the form and denomination of the bonds, rate of interest, place of payment, manner of execution, and other details not necessary to mention. If this is not the interpretation to be given the section, then the Legislature is to be convicted of a vain and foolish thing, because the section must be so interpreted to give it any effect whatever, the county already having power, as soon as organized, to issue

bonds for courthouse and jail purposes under the general laws heretofore mentioned.

[2] Counsel for appellant argues that the section is void by reason of being local and special legislation, regulating county affairs, which is prohibited by Section 24 of Article 4 of the Constitution. It is to be admitted that the section is local and special and regulates county affairs. All acts creating counties are local and special, and the limitation of the amount Harding county may spend for the purposes mentioned is a regulation of its affairs, in that it applies a different rule to it than is applied to the other organized counties under the general law. But this is of no consequence. The power granted by the Constitution to create new counties is of such a nature that, if other constitutional provisions conflict with it, they must ordinarily yield to the former power. In State v. Saint et al., 28 N. M., 165, 210 Pac. 573, just now decided, we said:

"It is conceded by counsel for appellants, very properly we think, that the creation of a county includes more than merely defining its boundaries; that it includes the appointment of its officers, or a provision for their appointment, the location of the county seat, provisions for the adjustment of its debts with the counties from which its territory has been taken, provisions for raising the funds for current expenses, and perhaps other provisions to enable the county to take its proper place among other counties in the state, and to perform its proper governmental and administrative duties; and in fact that it includes provisions for everything necessary and proper to enable the county to function as a complete municipal subdivision of the state."

We regard this statement, both upon principle and authority, as comprehensive and sound. When the Legislature creates a new county, it is presumed to know the conditions which exist therein and the requirements in the way of public buildings in order to enable the county to property function. If it is true, as is stated, in the briefs of appellee and undisputed by counsel for appellant, that in the village of Mosquero there is not a single building in which a term of court with a jury can be held, and that it is necessary, in order to house the county officers, care for the county records

and confine the county prisoners, to provide proper county buildings for these purposes, then it is as much of a necessity to have them as to have any other instrumentality whereby the county can function. Of this situation the Legislature is presumed to have had knowledge when it inserted the section in question in the act creating Harding county, and under such circumstances, it is clearly within the legislative power to make provisions therefor. We therefore hold that section 18 of chapter 48 of the Laws of 1921 is not open to any constitutional objection.

It follows from all the foregoing that the judgment of the district court is correct, and should be affirmed; and it is so oredered.

RAYNOLDS, C. J., concurs.